1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

11
12
13
14
15
16
17

RICHARD C.,[1]

                Plaintiff,

     v.

ANDREW M. SAUL, Commissioner of
Social Security,

                Defendant.

Case No. CV 19-08555-RAO

**MEMORANDUM OPINION AND
ORDER**

18  **I.**    **INTRODUCTION**

19
20
21

      Plaintiff Richard C. ("Plaintiff") challenges the Commissioner's denial of his application for supplemental security income ("SSI"). For the reasons stated below, the decision of the Commissioner is REVERSED, and the matter is REMANDED.

22  **II.**    **PROCEEDINGS BELOW**

23
24
25
26

      On December 11, 2015, Plaintiff filed a Title XVI application for SSI. (Administrative Record ("AR") 178-80.) His application was initially denied on April 25, 2016 (AR 100-04), and upon reconsideration on August 2, 2016 (AR 110-

27
28

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

14).  Plaintiff filed a written request for a hearing (AR 116-17), and a hearing was held on June 1, 2018 (AR 32.).  Represented by counsel, Plaintiff appeared and testified, along with an impartial vocational expert.  (AR 32-68.)  On September 4, 2018, the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability, pursuant to the Social Security Act, since December 11, 2015.  (AR 26.)  The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review.  (AR 1-3.)  Plaintiff filed this action on October 3, 2019.  (Dkt. No. 1.)

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act.  *See Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).  At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 11, 2015.  (AR 17.)  At **step two**, the ALJ found that since Plaintiff has the following severe impairments: schizophrenia and asthma.  (*Id.*; *see* AR 17-18.)  At **step three**, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  (AR 18.)

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to:

> [P]erform a full range of work at all exertional levels but with the following nonexertional limitations: he can occasionally climb ramps and stairs (due to asthma); never climb ladders, ropes, or scaffolds (due to asthma); he must avoid concentrated exposure to fumes, odors, gases, dangerous moving machinery, and unprotected heights (due to asthma); he is limited to simple, routine, and repetitive tasks involving simple work related decisions; he can occasionally manage changes in the work setting; he can occasionally interact with coworkers and supervisors; and he is precluded from contact with the general public.

(AR 20.)

///

2

At **step four**, the ALJ found that Plaintiff has no past relevant work.  (AR 25.)  At **step five**, the ALJ found that "[c]onsidering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform."  (*Id.*)  Accordingly, the ALJ determined that, as to Plaintiff's claim for SSI, Plaintiff had not been under a disability since January 8, 2015.  (AR 26.)

## III.   STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  A court must affirm an ALJ's findings of fact if they are supported by substantial evidence and if the proper legal standards were applied.  *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001).  "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)).  An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence.  Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion."  *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotation marks omitted).  "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld."  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see Robbins*, 466 F.3d at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ.").  The Court may review only "the

reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

## IV.   **DISCUSSION**

Plaintiff raises three issues for review: (1) whether the ALJ erred in rejecting Plaintiff's testimony regarding his subjective symptoms and functional limitations; (2) whether the ALJ erred in rejecting the opinion of Plaintiff's treating psychiatrist regarding his mental limitations; and (3) whether the ALJ erred in finding that Plaintiff can perform jobs existing in significant numbers in the national economy. (*See* Joint Submission ("JS") 2.)

### A.   **The ALJ Erred in Rejecting Plaintiff's Testimony Regarding His Subjective Symptoms and Functional Limitations**

Plaintiff contends that the "ALJ failed to identify any inconsistencies between Plaintiff's allegation and the evidence in the record, and did not offer any specific, clear and convincing reasons for rejecting his allegations regarding his subjective symptoms and functional limitations." (JS 7; *see* JS 7-11, 13.) The Commissioner contends that "the ALJ provided several legally valid reasons for finding his subjective complaints inconsistent with the record." (JS 22; *see* JS 13-22.)

#### 1.   **Plaintiff's January 29, 2019 Testimony**

Plaintiff completed tenth grade, but did not finish high school or obtain a GED. (AR 38.) He reported that he has not taken any other educational courses. (*Id.*) He does not have a driver's license and has never driven. (*Id.*)

As to prior work, Plaintiff explained that he worked a long time ago, when he was eighteen years old. (AR 39.) Plaintiff explained that he did not know why he stopped working or how long he worked. (AR 39-41.) Plaintiff did explain that one day he "started hearing voices and . . . [he] can't focus. [He] can't do nothing right. …[E]verything's a blur. [He] just can't function." (AR 39-40.) He reported that he tries to have normal days, but he cannot focus or do anything because of the voices.

4

(AR 40.)  Plaintiff noted that he would not be able to work because he cannot focus and cannot be still.  (AR 55.)

Plaintiff reported being able to use public transportation every day.  (AR 41.) He explained that he goes to Alhambra to "try and have a normal day and just exist." (AR 42.)  He takes one bus to Alhambra.  (AR 43.)  He goes to Alhambra to hang out because that is where he grew up.  (AR 42.)  He writes about how he feels.  (*Id.*) He spends his time on the streets of downtown Alhambra and has fun there.  (*Id.*)  He explained that he has a lot of memories.  (*Id.*)  Plaintiff also noted that he uses the bus to see mental health professionals.  (AR 43.)  He reported that he does not go to the movies, hang out with friends, or go to sporting events.  (AR 43.)  As to hobbies, Plaintiff keeps a journal.  (AR 44.)  Plaintiff also went to the library about four times and was trying to learn how to draw birds.  (AR 52.)  Plaintiff does not drink alcohol, and it has been more than five years since he last drank alcohol.  (AR 52-53.)  He has not used marijuana in more than five years.  (AR 54.)

Plaintiff explained that on a typical day he wakes up, washes up, and rides the bus.  (AR 44.)  Plaintiff stated that "it's real hard" and he "cannot think."  (*Id.*) Plaintiff reported that he has "a lot of fun because [he] love[s] people so [he has] a lot of fun just being around them."  (*Id.*)  However, Plaintiff explained that he does not socialize regularly because he does not "hang around a lot of people."  (*Id.*)  The day before the hearing, Plaintiff slept a lot, went to his uncle's, and "did some music." (AR 44-45.)  Plaintiff noted that he sometimes takes naps during the day because he is homeless.  (AR 59-60.)

Plaintiff reported that he is homeless.  (AR 45.)  He sleeps on the street every night.  (AR 46.)  He takes his medication at his mother's house every day, but he does not stay there.  (AR 46-47.)  Plaintiff's mother puts his medication on the table and sometimes "puts water."  (AR 58.)  He could not take the medication without her help.  (*Id.*)  Plaintiff explained that he does not prepare meals, but sometimes cooks Top Ramen at his mom's house.  (*Id.*)  He tries to help his mom with chores, like

taking out the trash, but he does not "know it's just really hard." (*Id.*)

Plaintiff reported that he wanted to pursue a career as an electrician or an X-ray technician, but realized that it is not possible. (AR 47-48.) He did not make any efforts to go to school. (AR 48.) Plaintiff noted that his grandmother drove him to the hearing. (AR 48.) His grandmother and mother help him take his medication, and they make sure he is safe and healthy. (*Id.*) Plaintiff needs his mother's help at all times to take his medication. (AR 49.) If he had a job not having to deal with people most of the day, he reported that he would not be able perform a job by himself because he cannot stay focused. (AR 60.)

Plaintiff explained that he thinks his medication helps with his symptoms, but he still hears voices and sees things. (AR 49.) When asked how the medications help, he responded "they help. Just like taking care of me, that I don't like now." (AR 49-50.) However, he still hears voices daily. (AR 50.) Plaintiff has reported to his doctors that he still hears voices and they have put him on different medication. (*Id.*) The voices tell him "everything." (AR 58.) He explained that the voices make him feel sad or hurt. (AR 59.) He reported feeling paranoid and being scared. (AR 58.) Plaintiff has difficulty concentrating, focusing, reading, and being happy. (AR 59.) He feels uncomfortable around people and cannot function anymore. (*Id.*)

Plaintiff testified that he previously received SSI benefits, but they were discontinued because he went to prison. (AR 55.) Plaintiff reported that he received mental health treatment, including classes and medication. (AR 56.) However, Plaintiff noted that he still heard voices during that time. (*Id.*) Once he was released, he went to a parole outpatient clinic once per month for an hour. (AR 56-57.) Plaintiff was prescribed medications. (AR 57.) Plaintiff reported that he gets treatment at Arcadia Mental Health once a month. (*Id.*) He gets "a little bit" of therapy and gets his prescriptions. (*Id.*) Plaintiff's doctor speaks to him "a little bit and she asks" him about his medication. (AR 61.) Plaintiff planned to start counseling. (*Id.*)

As to his asthma, Plaintiff explained that it is bad, but could be worse. (AR 62.) He has an inhaler, but does not use it. (*Id.*) He experiences shortness of breath and tries to be calm when that happens. (*Id.*) He forgets about his inhaler because of the voices and because he is unable to concentrate. (AR 63.)

### 2.    January 17, 2016 Function Report[2]

Plaintiff's ability to work is limited because he is not functioning normally. (AR 222.) He sees things, gets depressed at times, and is "unable to focus normally." (*Id.*) When he wakes up, Plaintiff takes his medication and goes back to sleep. (AR 223.) He gets back up and takes a shower, watches television, and listens to music. (*Id.*) Plaintiff also goes shopping with his mother three times per week when it is "possible when he is capable." (*Id.*) Plaintiff would like to go to school. (*Id.*)

Plaintiff does not take care of anyone else nor does he take care of any pets. (AR 23.) Before his condition, Plaintiff was attending adult school, in the process of getting his GED, and working temporary jobs. (*Id.*) His condition affects his ability to sleep sometimes. (*Id.*)

As to his personal care, Plaintiff's conditions affect Plaintiff's ability to bathe as he sometimes stays in bed. (AR 223.) He only shaves every week and a half. (*Id.*) Plaintiff's conditions affect his ability to feed himself and use the toilet. (*Id.*) Plaintiff's mother reported that when Plaintiff feels sick, he likes to be alone. (*Id.*) He needs reminders to shower, to get ready for the day, and to start the day right. (AR 224.) However, he does not need reminders to take medicine. (*Id.*)

Plaintiff sometimes prepares his own meals. (AR 224.) He eats fruit, vegetables, cereal, and sandwiches. (*Id.*) Ms. Ortiz cooks meals when she is able to and when Plaintiff wants her to. (*Id.*) When she is able to, she cooks once a day.

---

[2] This function report was completed by Plaintiff's mother, Ms. Ortiz. (*See* AR 230.) Both the Commissioner and Plaintiff appear to agree that the function report contains Ms. Ortiz's observations and opinions. (*See* JS 12-13, 21-22.) However, it is unclear whether the observations and opinions contained within belong to Ms. Ortiz or to Plaintiff. (*See* AR 222-30.)

(*Id.*)  Plaintiff can make his bed, clean after himself, and do light yardwork.  (*Id.*)  It takes him five minutes to make his bed and fifteen minutes to clean after himself.  (*Id.*)  Plaintiff needs encouragement to do these things by having someone at his side and showing him how.  (*Id.*)  As to yardwork, Plaintiff is unable to do yardwork when he is sick, but will sometimes help do yardwork.  (AR 225.)

Plaintiff goes outside every day.  (AR 225.)  He goes to appointments, walks, goes shopping, and has started to attend church.  (*Id.*)  Plaintiff walks and uses public transportation.  (*Id.*)  After being in hospitals for four years, he is adjusting to being in the public.  (*Id.*)  He does not drive.  (*Id.*)      Plaintiff shops in stores for clothing, groceries, shoes, and personal items.  (*Id.*)  He goes shopping three times per week or goes window shopping.  (*Id.*)  He is not able to pay bills because he does not have funds, but can count change, handle a savings account, and use a checkbook or money orders with the help of Ms. Ortiz.  (*Id.*)  His ability to handle money has not changed.  (*Id.*)

Plaintiff's hobbies and interests include, playing cards, writing journals, watching television, playing basketball, and listening to the radio.  (*Id.*)  Since his condition began, Plaintiff is unable to focus, he tires often, and feels sick.  (*Id.*)  He spends time with others two or three times a week when playing cards, playing basketball, goes to dinner, and visits his father and family.  (*Id.*)  Plaintiff is starting to go to church as he adjusts to the community.  (*Id.*)  He does need to be reminded to go places.  (*Id.*)  He goes to three or four appointments a day on a regular basis since December 2015.  (*Id.*)  Plaintiff needs someone to accompany him to appointments and sometimes to social outings.  (*Id.*)  He has problems getting along with others and wants to be alone when he feels sick.  (AR 227.)  Since his condition began, he does not want to be around anyone when he is sick or is frustrated.  (*Id.*)

Plaintiff's condition affects his ability to lift, squat, bend, stand, reach, walk, sit, kneel, talk, and climb stairs.  (AR 227.)  He sees things and hears voices.  (*Id.*)  His ability to remember, complete tasks, concentrate, understand, follow instructions,

use his hands, and get along with other has also been affected.  (*Id.*)  His abilities are affected when he feels sick and disabled, but "not all the time, only when frustrated [he] just want[s] to stay in bed."  (*Id.*)  Plaintiff sometimes needs help finishing what he starts because of his attention span.  (*Id.*)  He is "not good" at following written instructions because he has a hard time focusing and understanding, especially when he is sick.  (*Id.*)  As to verbal instructions, Plaintiff is "capable" only when he is not sick, he is "periodically disabled to focus daily, throughout the day."  (*Id.*)  He gets along very well with authority figures, has a good attitude, is respectful, and has manners.  (AR 228.)  Plaintiff handles stress by using his stress exercises, journaling, and playing basketball.  (*Id.*)  He can handle changes in routine "good, except when [he] is feeling sick."  (*Id.*)

### 3.    Applicable Legal Standards

In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis.  *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citing *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036) (internal quotation marks omitted).  If so, and if the ALJ does not find evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting a claimant's testimony regarding the severity of his symptoms.  *Id*.  The ALJ must identify what testimony was found not credible and explain what evidence undermines that testimony.  *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).  "General findings are insufficient."  *Lester*, 81 F.3d at 834.

///

///

9

### 4. Discussion

"After careful consideration of the evidence," the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 21-22.)  Specifically, the ALJ found that the relevant medical evidence and other evidence in the record only partially support Plaintiff's statements.  (AR 25.)  In finding Plaintiff's statements were only partially supported the ALJ relied on: (1) inconsistencies with the record; (2) Plaintiff's activities of daily living; (3) Plaintiff's course of treatment; and (4) Plaintiff's inconsistent statements.  (AR 22-23.)  No malingering allegation was made, and therefore, the ALJ's reasons must be "clear and convincing."

### a. Reason No. 1: Inconsistencies with the Record

The ALJ found Plaintiff's "statements about the intensity, persistence, and limiting effects of his symptoms, [were] inconsistent with the record." (AR 22.)  An ALJ may properly discredit a claimant's testimony that is inconsistent with the medical record.  *Molina*, 674 F.3d at 1113.  "However, when a claimant presents mental health issues, 'it is error to reject [his] testimony merely because symptoms wax and wane in the course of treatment.'"  *Martinez v. Berryhill*, No. 2:17-CV-05649-GJS, 2018 WL 4944861, at *3 (C.D. Cal. Oct. 10, 2018) (alteration in original) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014)).  "Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."  *Garrison*, 759 F.3d at 1017.

The ALJ noted that Plaintiff had a history of mental health treatment, including psychiatric hospitalizations.  (AR 22, citing 283-89, 293.)  However, the ALJ relied on records documenting "regular treatment," improved symptoms, and doctors'

observations that Plaintiff's symptoms were mild.  (AR 22, citing AR 313-14.)  The ALJ noted that Plaintiff reported he was doing well while on medications.  (*Id.*, citing AR 321.)  Additionally, the ALJ noted that "findings from mental status examinations were generally within normal limits."  (AR 22, citing AR 291-318, 331-38, 345-76, 377-79.)  The ALJ recognized that there were "[p]ositive findings" during two mental status examinations.  (*Id.*, citing AR 308, 357.)  These findings included, "auditory hallucinations, internal preoccupations at times, constricted affect, impoverished speech, and tight appearance."  (*Id.*)

As to Plaintiff's asthma, the ALJ noted that physical examination results were within normal limits.  (AR 22.)  The ALJ also pointed to a complete consultative internal medicine evaluation "revealed a few rhonchi and crackles in both lung fields. Otherwise the findings were within normal limits."  (*Id.*)

The Commissioner contends that "the ALJ reasonably found that the objective findings did not support the significant limitations Plaintiff alleged."[3]  (JS 16.)  In support the Commissioner points to two examinations that the ALJ relied on.  (*Id.*) First, the Commissioner points to the December 1, 2015 examination which the Commissioner contends "indicate [Plaintiff] was complying with his medication and had reported that his 'symptoms abated.'"  (JS 16, citing AR 313.)  Second, the Commissioner points to a January 2018 examination with normal results and in which Plaintiff reported auditory hallucinations.  (JS 16, citing AR 377.)  The Commissioner notes that while Plaintiff reported auditory hallucinations, he also indicated that "they were not bothersome and that he was able to distract himself from them."  (*Id.*, citing AR 333, 345, 348, 353, 377.)  However, the ALJ did not rely

---

[3] The Commissioner also contends that the ALJ relied on the fact that the opinions of Azizollah Karamlou, M.D., and state agency psychologists Jeannie Nunez, Psy.D., and Carol Mohney, Ph.D., did not support Plaintiff's subjective complaints.  (JS 16.) However, the ALJ did not rely on these opinions in assessing Plaintiff's testimony, and the Court cannot affirm on a ground on which the ALJ did not rely.  *See Orn*, 495 F.3d at 630.

on Plaintiff's statements that the auditory hallucinations were not bothersome or that he could distract himself.  (*See* AR 22-25.)  Because, the ALJ did not rely on the evidence cited by the Commissioner, the Court may not consider the Commissioner's attempts to explain what the ALJ *may* have been thinking.  *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1225-26 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").

Plaintiff contends that the "[a]lthough Plaintiff showed periodic improvements in his symptoms with mental health treatment, the ALJ's conclusions that Plaintiff's symptoms improved to the point that he would be able to return to regular work is belied by the treatment records."  (JS 8.)  Accordingly, Plaintiff contends that the ALJ erred in rejecting Plaintiff's testimony "because his symptoms waxed and waned in the course of treatment."  (*Id.*)

Plaintiff summarizes his treatment history.  (*See* JS 3-5.)  Specifically, Plaintiff points to an initial evaluation conducted at Arcadia Mental Health Center ("AMHC") on February 23, 2017.  (JS 4, citing AR 376.)  During the evaluation, Plaintiff reported being forgetful, having difficulty concentrating, increased sleep, feeling sad, auditory and visual hallucinations, and paranoid delusions.  (AR 376.)  It was noted that Plaintiff's "[p]sychotic symptoms of paranoia and hallucination interfere with functioning appropriately and effectively in a social and work environment."  (*Id.*)  Additionally, Plaintiff points to AMHC treatment records from March, May, September and November 2017, and January 2018 where Plaintiff reported daily auditory hallucinations despite being on medications.  (JS 4-5, citing AR 345, 348, 353, 357, 359, 365.)

Here, as discussed above, the ALJ relied on treatment records which the ALJ found documents Plaintiff's improved and mild symptoms.  (*See* AR 22.)  The ALJ relies on a December 1, 2015 evaluation from Atascadero State Hospital which

recounts Plaintiff's treatment while receiving treatment in the state hospital.  (*See* AR 22, 313-14.)  Additionally, the ALJ points to a January 4, 2016 case note in which Plaintiff reported that he was "doing well on the medication prescribed."  (AR 321; *see* AR 22.)  The ALJ further notes that examinations "were generally within normal limits," and that only two mental status examinations documented positive findings, including auditory hallucinations.  (AR 22.)  However, the ALJ fails to explain how this evidence undermines Plaintiff's testimony.  *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) ("ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.").

Additionally, the ALJ mischaracterizes the medical evidence.  The ALJ cites broadly to treatment records from 2017 and notes that Plaintiff's symptoms "improved significantly by July 2017" and "his doctor suggested [Plaintiff] could be taper[ed] off some of the medications."  (AR 22.)  The ALJ relies on a single treatment note in which it was noted that Plaintiff was "in the middle of tapering of[f] his meds."  (AR 351.)  The ALJ appears to suggest that Plaintiff was tapered off of some medication because his condition improved.  (*See* AR 22.)  However, a June 21, 2017 progress note shows that upon initial evaluation Plaintiff was taking three atypical antipsychotics with good response, but the side effects "include[d] significant excessive sedation."  (AR 353.)  It was noted that the last medication that was added did not have any added benefit and instead only increased the excessive sedation.  (*Id.*)  Plaintiff continued to report auditory hallucinations, but explained that he "doesn't find them bothersome, 'doesn't pay attention' to them and distracts himself by listening to music."  (*Id.*)  The record shows that, contrary to the ALJ's findings that Plaintiff improved, Plaintiff was tapered off of some medications because they caused excessive sedation and did not provide any additional benefit to Plaintiff's condition.  (*See id.*)  Additionally, while the ALJ notes that only two mental status examinations documented positive findings (AR 22), treatment records consistently document Plaintiff's reports of daily auditory hallucinations (*see* 324,

333, 345, 348, 353, 357, 359, 365).   Because the ALJ misconstrued the medical evidence, the Court cannot find that the ALJ provided a rational interpretation of the medical evidence.   *See Hernandez v. Astrue*, No. ED CV 10-1215-PLA, 2011 WL 1810901, at *5 (C.D. Cal. May 12, 2011) (finding that where ALJ misconstrued the medical evidence, the "ALJ's interpretation of that evidence (i.e., that [claimant's] mental health records reveal only mild mental limitations) does not support his rejection of the nonexamining physicians' opinions.").   Accordingly, the Court cannot affirm the ALJ's finding that Plaintiff's testimony is inconsistent with the medical evidence.

In sum, the Court finds that this is not a clear and convincing reason for discounting Plaintiff's testimony.   *See Martinez*, 2018 WL 4944861, at *4 (finding that where the "treatment records on which the ALJ relied are not indicative of [claimant's] overall mental condition, they do not provide a specific, clear, and convincing basis for discounting Plaintiff's testimony.").

### b.   *Reason No. 2: Activities of Daily Living*

The ALJ found that the Plaintiff's activities of daily living are inconsistent with Plaintiff's statements concerning the alleged intensity, persistence, and limiting effects of symptoms.   (AR 23.)

Inconsistencies between symptom allegations and daily activities may act as a clear and convincing reason to discount a claimant's credibility.   *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991).   But a claimant need not be utterly incapacitated to obtain benefits. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).   "If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999); *accord Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).   Additionally, an ALJ may rely on a claimant's "daily activities

to form the basis of an adverse credibility determination" where the activities contradict the claimant's other testimony.  *Orn*, 495 F.3d at 639; *see Burkett v. Berryhill*, 732 F. App'x 547, 552 (9th Cir. 2018) ("While transferability of skills to a work setting is one way in which an ALJ may consider a claimant's daily activities, an ALJ may also discount claimant testimony where reported daily activities contradict the claimant's alleged extent of her limitations.").

Here, the ALJ relied on Plaintiff's ability "to use public transportation, complete activities of daily living independently, journal, watch television and movies, do the laundry, clean up after himself, prepare simple meals, play cards, and play basketball." (AR 23.)  First, the ALJ reasoned that "[s]ome of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment."  (*Id.*) However, the fact that Plaintiff performs some daily activities does not detract from his testimony.  The mere ability to perform some tasks is not necessarily indicative of an ability to perform work activities because "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair*, 885 F.2d at 603; *see also Molina*, 674 F.3d at 1112-13 (the ALJ may discredit a claimant who "participat[es] in everyday activities indicating capacities that are transferable to a work setting").

The Commissioner contends that the ALJ was not required to "show that Plaintiff's activities were transferable to work" because activities of daily living may also be used to discredit testimony when it contradicts claims of total debilitation impairment.  (JS 20-21.)  However, the ALJ reasoned that some of the abilities required by Plaintiff's activities were similar to those needed for employment, but failed to make any specific findings as to the transferability of those activities.  *See Orn*, 495 F.3d at 630 (holding that an ALJ must make "specific findings related to [the daily] activities and their transferability to conclude that a claimant's daily

activities warrant an adverse credibility determination"); *Christine G. v. Saul*, 402 F. Supp. 3d 913, 928 (C.D. Cal. 2019).  Accordingly, the ALJ's reliance on Plaintiff's activities of daily living in this manner does not constitute a clear and convincing reason for discounting Plaintiff's testimony.  *See Bertha E. v. Saul*, No. 2:19-CV-05133-JDE, 2020 WL 2061774, at *6 (C.D. Cal. Apr. 29, 2020) (finding that the "ALJ's conclusory statement that 'some of the physical and mental abilities and social interactions required to perform [Plaintiff's daily] activities are the same as those necessary for obtaining and maintaining employment'" failed to "identify which activities translate into what workplace activities" and did not constitute a clear and convincing reason for discrediting claimant's testimony).

Second, the ALJ reasoned that Plaintiff's "ability to participate in such activities is inconsistent with the claimant's statements concerning the alleged intensity, persistence, and limiting effects of symptoms."  (AR 23.)   Plaintiff contends that the "ALJ misstated and mischaracterized the extent and nature of Plaintiff's reported daily activities to justify her adverse credibility findings."  (JS 10.)  Specifically, Plaintiff notes that his "limited daily activities while homeless and living on the streets, and with the assistance of his mother, did not undermine his allegations regarding his symptoms and functional limitations, and did not indicate ability to engage in any work on a regular and continuing basis."  (*Id.*)

While the ALJ summarized Plaintiff's activities of daily living, the ALJ failed to consider Plaintiff's description of his daily activities and limitations associated with those activities.  *See Robinson v. Berryhill*, No. ED CV 17-2238-PLA, 2018 WL 3807939, at *8 (C.D. Cal. Aug. 8, 2018) ("An ALJ must take into account a claimant's description of her daily activities and any limitations on her ability to complete those activities.") (citing *Revels v. Berryhill*, 874 F.3d 648, 667-68 (9th Cir. 2017)).  Plaintiff testified that when he used public transportation, he only used one bus to reach his destination.  (*See* AR 43.)  While the ALJ noted that Plaintiff completed activities of daily living independently (AR 23), Plaintiff testified that he

16

could not take his medication without his mother's help (*see* AR 49, 58). Additionally, the ALJ failed to explain which testimony was inconsistent with Plaintiff's activities of daily living. *See Brown-Hunter*, 806 F.3d at 494 (finding ALJ committed legal error where "ALJ failed to identify the testimony she found not credible" and "did not link that testimony to the particular parts of the record supporting her non-credibility determination"). Accordingly, the ALJ's reliance on Plaintiff's activities of daily living in this manner did not constitute a clear and convincing reason for discounting Plaintiff's testimony.

### c. *Reason No. 3: Course of Treatment*

The ALJ found that Plaintiff did not receive "the type of medical treatment one would expect if the limitations imposed by the [Plaintiff's] impairments were as broad and limiting as [he] alleged." (AR 23.) An ALJ may discount a claimant's credibility based on routine and conservative treatment. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting a plaintiff's complaint "that she experienced pain approaching the highest level imaginable" as "inconsistent with the 'minimal, conservative treatment' that she received").

Here, the ALJ noted that Plaintiff's treatment was "essentially routine and conservative," as he "was generally treated with medications." (AR 23.) The ALJ pointed to the "lack of a more aggressive treatment, such as a psychiatric hospitalization or inpatient treatment for the asthma, suggests [Plaintiff's] symptoms and limitations are not as severe as he alleges." (*Id.*)

Plaintiff contends that "medical records indicate that Plaintiff was receiving psychiatric care while incarcerated, and upon his release from prison, continued psychiatric care at the [California Department of Corrections Parole Outpatient Clinic], and thereafter at AMHC." (JS 11.) Additionally, Plaintiff argues that there was no indication that more aggressive treatment was available. (*Id.*) The

1    Commissioner argues that the "ALJ reasonably found that his conservative treatment
2    weighed against his complaints."  (JS 19-20.)

3            While Plaintiff's treatment consisted primarily of medications, the Court is not
4    persuaded that the treatment was routine and conservative.  The record shows that
5    Plaintiff at times was treated with three atypical antipsychotics and several other
6    medications.  (AR 353.)  Additionally, as discussed above, it is not clear that
7    Plaintiff's condition improved while on these medications.  *See Warre v. Comm'r of*
8    *Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be
9    *controlled effectively* with medication are not disabling for the purpose of
10   determining eligibility for SSI benefits.") (emphasis added).  Moreover, while the
11   ALJ reasoned that Plaintiff was not psychiatrically hospitalized (AR 23), the record
12   shows that prior to applying for SSI, Plaintiff underwent treatment while at
13   Atascadero State Hospital after being convicted of assault with a deadly weapon,
14   causing bodily harm (*see* AR 337).  Notwithstanding, Plaintiff's previous
15   hospitalization, the fact that Plaintiff "had not experienced psychiatric hospitalization
16   is neither a clear and convincing nor specific and legitimate reason to discredit his
17   testimony." *Morales v. Berryhill*, 239 F. Supp. 3d 1211, 1218 (E.D. Cal. 2017); *see*
18   *Finn v. Astrue*, No. EDCV11-1388 CW, 2013 WL 501661, at *5 (C.D. Cal. Feb. 7,
19   2013) ("[T]he conclusion that the opined mental limitations are not supported
20   because Plaintiff was not hospitalized for mental health treatment is unfounded.").

21           Thus, this was not a clear and convincing reason for discounting Plaintiff's
22   testimony.  *See Callahan v. Berryhill*, No. EDCV 17-1247-KS, 2018 WL 2446649,
23   at *6 (C.D. Cal. May 29, 2018) (finding ALJ did not provide a clear and convincing
24   reason for rejecting claimant's testimony where claimant was on multiple
25   medications, still experienced symptoms, and claimant was not hospitalized).

26                              *d.  Reason No. 4: Inconsistent Statements*

27           The ALJ found that "the record reflects that [Plaintiff] has made inconsistent
28   statements regarding matters relevant to the issue of disability."  (AR 23.)  An ALJ

18

1   may consider inconsistent statements by a claimant in assessing his credibility.

2   *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

3       Plaintiff contends that "the ALJ misstated and mischaracterized the medical

4   record, as while Plaintiff was reporting that he was 'doing well,' at the same time he

5   was reporting ongoing symptoms of schizophrenia despite taking medications."  (JS

6   11.)   The Commissioner argues that "even if Plaintiff still experienced some

7   symptoms, he did not need to be symptom free for the ALJ to find him not disabled."

8   (JS 19.)

9       In support of her finding, the ALJ relied on a December 7, 2015 evaluation in

10  which Plaintiff reported that "when he is taking his medication his symptoms are well

11  controlled."  (AR 23, 324.)   Additionally, the ALJ points to a February 5, 2016 case

12  note in which Plaintiff reported that he is doing well, and medications are controlling

13  his symptoms.  (AR 23, 335.)   The ALJ's reasoning regarding Plaintiff's alleged

14  inconsistent statements is not convincing.  As a preliminary matter, it is not clear that

15  Plaintiff's statements were inconsistent with his symptom testimony.  During the

16  administrative hearing, Plaintiff testified that he thinks his medication helps with his

17  symptoms, but explained that he still hears voices and sees things.  (*See* AR 49.)

18  However, when questioned, Plaintiff was unable to explain how his medication

19  helped.  (*See* AR 49-50.)  While the Commissioner is correct that a claimant does not

20  need to be symptom free, the ALJ failed to recognize the existence or persistence of

21  Plaintiff's symptoms.  (*See* AR 23-24.)  As discussed above, the ALJ misconstrued

22  the medical evidence.  Instead of evaluating Plaintiff's statements as a whole, the

23  ALJ points to two records, one from late 2015 and one from early 2016, which fail

24  to reflect overall record.  *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014)

25  ("[T]reatment records must be viewed in light of the overall diagnostic record.").

26  Specifically, the ALJ failed to discuss any of Plaintiff's statements in which he

27  reported auditory hallucinations despite being on medication.  (*See, e.g.¸* AR 333,

28  ///

19

1    345, 348.)  The ALJ failed to make any findings as to the seriousness or limiting

2    effects, if any, of Plaintiff's reported auditory hallucinations.  (*See* AR 22-25.)

3        Accordingly, this was not a clear and convincing reason for discounting

4    Plaintiff's testimony.  *See Bakarich v. Colvin*, No. CV 13-02620-PHX-JZB, 2015

5    WL 1470103, at *10 (D. Ariz. Mar. 31, 2015) (finding that inconsistent statements

6    did not constitute a clear and convincing reason where ALJ relied on statements that

7    were "several years' old and merely isolated examples that do not capture the record

8    as whole").

9            **5.    Conclusion**

10        In sum, the ALJ did not give clear and convincing reasons, supported by

11   substantial evidence, for discounting Plaintiff's testimony.  Accordingly, remand is

12   warranted on this issue.[4]

13   **B.    The Court Declines to Address Plaintiff's Remaining Argument**

14        Having found that remand is warranted, the Court declines to address

15   Plaintiff's remaining arguments.  *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir.

16   2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to

17   reach [plaintiff's] alternative ground for remand."); *see also Augustine v. Astrue*, 536

18   _____

19   [4] Plaintiff also alleges that the ALJ improperly assessed the function report prepared
     by his mother, Ms. Ortiz.  (JS 12-13.)  The Commissioner contends that the ALJ
20   "reasonably accorded [Ms. Ortiz's] statement partial weight."  (JS 21-22.)  The ALJ
     gave Ms. Ortiz's statements "partial weight."  (AR 23-24.)  However, its is not clear
21   that the function report contains Ms. Ortiz's observations and opinions.  (AR 222-
     230.)   The report contains statements that are attributable to Plaintiff as it
22   occasionally states "he says" (*see* AR 227-28), and occasionally states Ms. Ortiz's
     name before a statement (*see* AR 224).  However, the ALJ simply notes that the
23   statement was "completed by [Plaintiff's] mother, . . ., on behalf of [Plaintiff] in
24   January 2016" and goes on to state that Ms. Ortiz "contended" or "reported."  (*See*
     JS 21.)  Having found that remand is appropriate for reassessment of Plaintiff's
25   subjective testimony, the Court finds that on remand the ALJ shall also determine
26   whether the opinions contained in the January 2016 function report are those of
     Plaintiff or Ms. Ortiz, and shall then reassess those opinions pursuant to the
27   appropriate standard.
28

F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

### C.     Remand for Further Administrative Proceedings

Because further administrative review could remedy the ALJ's errors, remand for further administrative proceedings, rather than an award of benefits, is warranted here. *See Brown-Hunter*, 806 F.3d at 495 (remanding for an award of benefits is appropriate in rare circumstances). Before ordering remand for an award of benefits, three requirements must be met: (1) the Court must conclude that the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the Court must conclude that the record has been fully developed and further administrative proceedings would serve no useful purpose; and (3) the Court must conclude that if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Id.* (citations omitted). Even if all three requirements are met, the Court retains flexibility to remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* (citation omitted).

Plaintiff contends that "his testimony should be credited as a matter of law" and the case should be remanded for an award of benefits. (JS 39.) The Commissioner contends that "remand for further proceedings is the only proper remedy." (JS 40.)

Here, remand for further administrative proceedings is appropriate. The Court finds that the ALJ failed to provide clear and convincing reasons supported by substantial evidence to discount Plaintiff's subjective testimony. On remand, the ALJ shall reassess Plaintiff's subjective testimony. The ALJ shall then reassess Plaintiff's RFC in light of the reassessment of Plaintiff's subjective allegations and proceed through step four and step five to determine what work, if any, Plaintiff is

capable of performing.  This order does not preclude the ALJ from considering, on remand, the additional issues raised by Plaintiff.

## V.    CONCLUSION

IT IS ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits and REMANDING the matter for further proceedings consistent with this Order.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED:  August 31, 2020

_____
ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

### NOTICE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**

22